**Linda L. (Shodrock) ROHDE,
Plaintiff-Appellee,**

v.

**K. O. STEEL CASTINGS, INC.,
Defendant-Appellant.**

**No. 80-1394.**

United States Court of Appeals,
Fifth Circuit.
Unit A

June 30, 1981.
Rehearing Denied Aug. 18, 1981.

Schoolfield, Smith & Weissert, Allen P. Schoolfield, Jr., John M. Weissert, Dallas, Tex., for defendant-appellant.

Southers, Goldberg & Lyons, Inc., Jeffrey Clarke Anderson, Steven A. Sinkin, San Antonio, Tex., for plaintiff-appellee.

Before RUBIN and GARZA, Circuit Judges, and SPEARS,* District Judge.

GARZA, Circuit Judge:

Plaintiff-appellant Linda Shodrock Rohde maintains this suit against her former employer, defendant-appellant K. O. Steel Castings, Inc. Rohde was discharged following an altercation with a male employee who retained his job. She alleges that this constituted impermissibly disparate treat-

* District Judge of the Western District of Texas, sitting by designation.

ment of "similarly situated" employees, amounting to discrimination on account of sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Rohde had been employed for almost six years at the time of her discharge. She worked as the only secretary on the company's "executive floor." For some time, she had been engaged in an affair with Arnulfo Lopez, a cleaning room foreman for K. O. The record indicates that company executives were aware of their relationship.

This peaceable status quo collapsed on the evening of July 15, 1976, when Lopez went to Rohde's apartment and struck her in the course of an argument. The next morning, Rohde called the firm's personnel director and told him that she had been injured. He allowed her to remain at home. She returned on the 17th, only to be assaulted by Lopez again. The personnel director was advised of this second incident and told her to take the balance of the week off, the days coming from vacation time. The company's president and vice-president were out of town on business, and returned on Monday the 21st to learn of Rohde's absence. She was then told that her services were no longer required. It is undisputed that Lopez was not dismissed.

This suit followed, and the district court appointed a United States Magistrate to "hear and determine the merits," pursuant to 42 U.S.C. § 2000e–5(f)(5) and 28 U.S.C. § 636(b)(2). A three-day evidentiary hearing was held, at which K. O. attempted to rebut the discrimination allegations by presenting evidence that Rohde was a poor employee who was discharged on the basis of her record as a whole, and that Lopez' record, in contrast, was meritorious. The magistrate agreed, and filed Findings of Fact and Conclusions of Law which sustained K. O.'s position. The district court rejected these findings and, concluding that Rohde had established a prima facie case which K. O. had failed to rebut, entered judgment in favor of Rohde.

K. O. mounts a two-pronged attack on this judgment. First, it contends that the district court erred in determining that the findings of the magistrate were "clearly erroneous," and that it did not accord proper deference to those findings; secondly, it asserts that the court erred in its definition of "similarly situated" under Title VII, and in holding that these two employees were so situated. We find both arguments to be without merit, and affirm.

The parties have devoted a considerable portion of their briefs and argument to the question of the standard of review. Indeed, on the procedural history of this case, the question is not without difficulty. The dispute centers on whether we apply the "clearly erroneous" standard to the findings of the magistrate, who found that Rohde was not discriminated against under 42 U.S.C. § 2000e, or to the conclusion of the district court that she was.

Fed.R.Civ.P. 53 governs references to a master, whether it be to "a referee, an auditor, an examiner, a commissioner, [or] an assessor." Subsection (e)(2) of that rule governs the effect of the master's findings: "in an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous... The court after hearing may adopt the report or modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." The district court, in its opinion rejecting the magistrate's recommendation, recognized that it was "bound by the clearly erroneous standard..."

■ Once the master's recommendation is accepted or rejected, however, what standard must be applied by the Court of Appeals? It is uniformly held that to the extent that a district court accepts the master's findings, they become the findings of the district court, and cannot be set aside in the Court of Appeals unless clearly erroneous. *See* Fed.R.Civ.P. 52(a); *Coen v. Zick*, 458 F.2d 326 (9 Cir. 1972); *In Re American Packer's Exchange, Inc.*, 449 F.2d 1313 (1 Cir. 1971); *In Re George W. Myers Co.*, 448 F.2d 1260 (3 Cir. 1971); *Transportation Ins. Co. v. Hamilton*, 316 F.2d 294 (10 Cir. 1963); *London v. Troitino Bros., Inc.*, 301 F.2d 116 (4 Cir. 1962); *Howard Indus., Inc. v. Rae*

**320**

*Motor Corp.*, 293 F.2d 116 (7 Cir. 1961); *Porterfield v. Gerstel*, 249 F.2d 634 (5 Cir. 1957); *Cold Metal Process Co. v. Republic Steel Corp.*, 233 F.2d 828 (6 Cir. 1956); *In Re DiPalo*, 218 F.2d 816 (2 Cir. 1955); *Collins v. O'Brien*, 208 F.2d 44 (D.C. Cir. 1953); *Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co.*, 148 F.2d 497 (8 Cir. 1945). Where the district court rejects the master's findings in whole or in part, the applicable standard is less clear. The Fourth Circuit has held that it would give due consideration to the fact that the master heard the witnesses and the judge did not, but that it would accept the district court's findings unless clearly erroneous. *See U. S. v. Twin City Power Co.*, 248 F.2d 108 (4 Cir. 1957); *Mutual Savings & Loan Ass'n v. McCants*, 183 F.2d 423 (4 Cir. 1950). The majority view however, and that of this circuit, is that the findings of the master will be measured by the clearly erroneous rule. *See Matter of Multiponics, Inc.*, 622 F.2d 709, 722–23 (5 Cir. 1980); 9 Wright and Miller, Federal Practice and Procedure § 2584.

As the district court cogently observed, the application of this rule of construction has little relevance here. The court admitted that it was bound by the clearly erroneous standard "for the magistrate's credibility determinations and findings of subsidiary facts . . . [but not] . . . in regard to the magistrate's determination of nondiscrimination, which is a finding of ultimate fact." *See Williams v. Tallahassee Motors, Inc.*, 607 F.2d 689 (5 Cir. 1979); *East v. Romine, Inc.*, 518 F.2d 332 (5 Cir. 1975).[1] Thus, the district court accepted the subsidiary findings of its master, but, upon weighing them, reached a different conclusion as to the ultimate discrimination issue. Under *Williams* and *East, supra*, we are also unconstrained by the strictures of the clearly erroneous rule in passing on the nondiscrimination conclusion.

---

1. The opinion in *East v. Romine* quotes the illuminating comments of Judge Bell on this distinction in *Causey v. Ford Motor Co.*, 516 F.2d 416 (5 Cir. 1975):

At the outset, it is important to delineate our standard of review for assessing the correctness of the district court's nondiscrimination findings. Rule 52(a), F.R.Civ.P., lays down the "clearly erroneous" test for appellate review of district court findings of fact. Under this test, a finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" by the district court. *United States v. United States Gypsum Co.*, 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766. *See also Chaney v. City of Galveston*, 5 Cir., 1966, 368 F.2d 774, 776.

There exists, however, a significant distinction for the purpose of applying the clearly erroneous test between findings of subsidiary fact and findings of ultimate fact. *See Galena Oaks Corp. v. Scofield*, 5 Cir., 1954, 218 F.2d 217, 219–20. Finding a subsidiary fact involves the determination of an evidentiary or primary fact; finding an ultimate fact, on the other hand, "may involve the very basis on which judgment of fallible evidence is to be made." *Baumgartner v. United States*, 1944, 322 U.S. 665, 671, 64 S.Ct. 1240, 1244, 88 L.Ed. 1525, 1529. Thus, for example, a finding of infringement of a patent is a finding of ultimate fact, *see Industrial Instrument Corp. v. Foxboro Co.*, 5 Cir., 1962, 307 F.2d 783, 786 n. 2; as is a finding that a gain

should be treated as capital rather than ordinary for income tax purposes. *See Gamble v. Commissioner*, 5 Cir., 1957, 242 F.2d 586, 590. With respect to ultimate findings of fact, furthermore, we noted in *Industrial Instrument Corp. v. Foxboro Co., supra*, 307 F.2d at 786 n. 2:

We may reverse free of the clearly erroneous rule where . . . the issue revolves around an ultimate fact question as distinguished from subsidiary fact questions . . . .

*See also Galena Oaks Corp. v. Scofield, supra*, 218 F.2d at 219.

Although discrimination *vel non* is essentially a question of fact it is, at the same time, the ultimate issue for resolution in this case, being expressly proscribed by 42 U.S.C.A. § 2000e-2(a). As such, a finding of discrimination or nondiscrimination is a finding of ultimate fact. *See Hester v. Southern Railway Co.*, 5 Cir., 1974, 497 F.2d 1374, 1381; *United States v. Jacksonville Terminal Co.*, 5 Cir., 1971, 451 F.2d 418, 423–24. In reviewing the district court's findings, therefore, we will proceed to make an independent determination of appellant's allegations of discrimination, though bound by findings of subsidiary fact which are themselves not clearly erroneous. *Also*, as in *Humphrey v. Southwestern Portland Cement Co.*, 5 Cir., 1974, 488 F.2d 691, 694, we must determine whether there are requisite subsidiary facts to undergird the ultimate facts. 516 F.2d 416 at 420–421.

■ Beyond the standard of factual review, it cannot be disputed that the court of appeals may reexamine the legal conclusions of either the magistrate or district court, and reverse if error is perceived. The district court ruled that the magistrate placed too narrow a construction on the "similarly situated" requirement, in holding that the jobs of two employees receiving disparate treatment must have been "similar in all respects" to give rise to a cause of action.

■ We agree with the district court's studied conclusions of law on the order and burden of proof in this case as well as its construction of "similarly situated." As the court noted, under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973), "The complainant in a Title VII trial must carry the initial burden under the statute of showing a prima facie case of racial discrimination." In 1978, the Supreme Court held that a prima facie case under *McDonnell-Douglas* is established where the plaintiff shows "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957, 966. Once a prima facie case is shown, *McDonnell-Douglas* provides that the burden "must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." 411 U.S. 792 at 802, 93 S.Ct. 1817 at 1824, 36 L.Ed.2d 668 at 678. The burden then shifts back to the plaintiff to show by a preponderance of the evidence that the employer's reason was a pretext for discrimination. 411 U.S. 792 at 804, 93 S.Ct. 1817 at 1825, 36 L.Ed.2d 668 at 679. *See also Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1254 (5 Cir. 1977); *Causey v. Ford Motor Co.,* 516 F.2d 416, 420 at n. 6 (5 Cir. 1975); *Peters v. Jefferson Chemical Co.,* 516 F.2d 447, 449–51 (5 Cir. 1975).

The magistrate made 21 findings of fact and three conclusions of law.[2] The critical

2.  FINDINGS OF FACT

1. Plaintiff, Linda Shodrock, is a white female citizen of the United States and a resident of San Antonio, Bexar County, Texas.

2. Defendant, K. O. Steel Castings, Inc., is a Texas corporation operating and doing business in the City of San Antonio, Bexar County, Texas.

3. Defendant is engaged in an industry affecting commerce and employs and has employed at least twenty-five (25) persons.

4. Plaintiff was first employed by defendant on or about November, 1970, as a secretary to the Personnel and Production Control Department.

5. Plaintiff received a raise on March 23, 1971, as a result of a pre-employment agreement between plaintiff and defendant's representative that a raise would be given after the completion of the three-month probationary period.

6. During her original tenure of employment with defendant commencing in November, 1970, plaintiff satisfactorily performed her duties as secretary to the Personnel and Production Control Department of defendant.

7. Plaintiff voluntarily terminated her employment with defendant in September, 1972.

8. In October or early November of 1972, plaintiff contacted Charles Logan, defendant's representative, and requested employment with defendant. Plaintiff was advised at that time by representative Logan that plaintiff's old position had been filled but that defendant would hire plaintiff as a receptionist-secretary.

9. Plaintiff accepted the position of receptionist-secretary and was rehired by defendant on November 8, 1972.

10. In May, 1973, plaintiff was transferred into the bookkeeping department to take the place of an employee who was anticipating retirement.

11. Plaintiff, unable to satisfactorily perform the duties required in the bookkeeping department was transferred from that department to a position as secretary.

12. Plaintiff was continuously employed by defendant from November, 1972 until on or about June 21, 1976.

13. Subsequently, plaintiff was transferred to the executive offices as secretary in that department, and on or about June 21, 1976, plaintiff was terminated. The plaintiff was replaced by Debbie Burkhardt, a Caucasian female.

14. On or about June 15, 1976, a controversy occurred at plaintiff's apartment between plaintiff and a supervisor of defendant, Arnulfo Lopez.

15. In a meeting in the president's office on June 21, 1976, the executives were informed of the incident between plaintiff and Lopez.

fact deduced was that "[P]laintiff was not discharged because of her controversy with Lopez, but because of a series of instances in which her work was unsatisfactory." The critical legal conclusion was that "[T]he plaintiff failed to present a prima facie case of sex discrimination against defendant."

■ The magistrate correctly recited the relative burden of proof as we have described it above, and was correct in holding that "to successfully establish a prima facie case of sex discrimination based upon disparate treatment the complainant must show that she is a member of a protected minority, and that because of her sex, she and a *similarly placed* male received dissimilar treatment." Indeed, in *Turner v. Texas Instruments, supra*, we held that a prima facie case was made out simply by "the discharge of Turner, a black, and the retention of Burns, a white, under apparently similar circumstances." 555 F.2d 1251 at 1255.

A careful perusal of the magistrate's opinion reveals that the sole reason for his conclusion that a prima facie case was not shown lies in his statement that "[I] must construe the term 'similarly placed' as meaning performing functions of the same or substantially similar type, requiring equal skills, efforts and responsibilities." This rule was derived by analogy to cases under the Equal Pay Act. *See* 29 U.S.C. § 206(d)(1); *Pond v. Braniff Airways, Inc.*, 500 F.2d 161, 165–66 at n. 7 (5 Cir. 1974); *Bullock v. Pizza Hut*, 429 F.Supp. 424, 427–28 (M.D.La.1977). He noted that:

> 16. It was determined that with respect to Lopez' involvement, there were insufficient grounds to release him and he was not disciplined.
> 17. As a result of the meeting, the president stated plaintiff would be fired.
> 18. Plaintiff was not discharged because of her controversy with Lopez, but because of a series of instances in which her work was unsatisfactory.
> 19. In November, 1975, plaintiff was taken off of an hourly wage basis and paid a salary of approximately $13,000 a year until her termination.
> 20. While plaintiff contends the change to salary was a raise, she earned in 1974, $12,122.76, and in 1975 prior to change to salary in November, she had earned $12,067.85.

As noted earlier the duties performed by plaintiff and Lopez were in no way similar. Plaintiff worked in the office for the most part on a forty-hour schedule, while Lopez, a shop foreman, was on call twenty-four hours a day. Plaintiff's job entailed standard secretarial duties such as typing correspondence, answering the phone, and typing reports while Lopez' job consisted of supervising a number of other employees in shop work and ensuring production took place as scheduled. In view of these differences I can find no basis for a claim of sex discrimination based upon disparity in the treatment of plaintiff and Lopez.

■ In the context of a disparate treatment suit under the Civil Rights Act, we agree with the district court that this construction is entirely too narrow. While analysis of differential treatment concerning pay scales is reasonably and logically tied to a consideration of substantial equality in skill, effort, and responsibility, those considerations are largely irrelevant to the establishment of a prima facie disparate treatment by discharge case. What *is* relevant is that two employees are involved in or accused of the same offense and are disciplined in different ways. Differences in job status and skill may well have an impact on the second phase of proof under *McDonnell-Douglas*, in which the employer must prove a legitimate and nondiscriminatory reason for the differing treatment, but they should not defeat a prima facie case as alleged under *Turner.*

> 21. I do not find that the bringing of plaintiff's suit was intentionally vexatious or harassing.
>
> CONCLUSIONS OF LAW
>
> 1. The plaintiff failed to present a prima facie case of sex discrimination against defendant.
> 2. If plaintiff should be held to have made out a prima facie case, the defendant by a preponderance of the evidence has proved that legitimate non-discriminatory reasons existed to support its action of discharging plaintiff.
> 3. Plaintiff was afforded an opportunity to show the defendant's articulated reason was a pretext for discrimination, and failed to sustain her burden of proof.

Thus, without disturbing the magistrate's subsidiary findings, we conclude that Rohde did make out a prima facie case. We are left, then, with the legal conclusions that K. O. carried its burden under the second phase of *McDonnell-Douglas*, and that Rohde did not meet hers under the third phase. These conclusions embody the magistrate's factual finding that "Rohde was not discharged because of her controversy with Lopez," but instead for permissible employment-related reasons.

Accordingly, the precise issue is whether Rohde was fired under the impetus of discrimination or for a valid reason; it is whether she was indeed discriminated against. Under *Causey v. Ford Motor Company, supra* n. 1, the presence or absence of discrimination is the "ultimate issue for resolution" in a suit under 42 U.S.C.A. § 2000(e), and is, "[A]s such, . . . a finding of ultimate fact." We may therefore "proceed to make an independent determination of [Rohde's] allegations of discrimination, though bound by findings of subsidiary fact," if we do not consider those findings to be clearly erroneous. 516 F.2d 416 at 421.

We do not believe that K. O. met its burden of rebuttal under *McDonnell-Douglas*. That burden required, as the district court noted, proof that Rohde would have been fired *anyway*, in the absence of discrimination. *See Fisher v. Flynn*, 598 F.2d 663, 665 (1 Cir. 1979); *Whiteside v. Gill*, 580 F.2d 134, 138 (5 Cir. 1978). It was insufficient to show that sex was not the *only* issue for the discharge. Here, K. O. executives testified that the incident in June, 1976, was the "straw that broke the camel's back," and "the crowning blow." Both the record and the magistrate's own findings show a causal relationship between the altercation and dismissal.

Further, the magistrate did not make findings to suggest a legitimate, non-discriminatory reason for the different treatment of Lopez and Rohde; he found no more than that the company executives had determined there to be "insufficient grounds to release him." In the absence of an express finding as to the value of Lopez' services in contrast to Rohde's, we have delved into the record. Very little comparative evidence was offered. As the district court noted:

> The Defendant did not offer any records or detailed evidence of Lopez' work history predating the incident. No supervisor, past or present, was called upon to testify to Lopez' work. No attendance or payroll records were offered. Moreover, Fraunhofer admits that upon the request of Lopez' supervisor, Fraunhofer had counselled Lopez about coming to work under the influence of alcohol. The fact that Fraunhofer had forgotten about the counselling session until someone reminded him detracts from the force of his general recitation that Lopez was the "best supervisor" and had a "good work record and long service."

As Rohde carried her *McDonnell-Douglas* phase-one burden and K. O. failed to carry its burden under phase-two, she was absolved from the necessity of making a phase-three showing and did, therefore, establish a Title VII violation.

Though the appellant has artfully attempted to lock us into affirmance of the magistrate's recommendation through misguided reliance on the clearly erroneous rule, both the record and the findings below compel affirmance of the district court instead. Where two employees were engaged in an altercation and the aggressor went unpunished while the victim, a member of a minority protected by the Act, bore the full brunt of retribution, it is clear to us that Congress intended a cause of action to lie in the absence of a sufficient explanation of nondiscriminatory reasons for the disparity. We are unable to discern such an explanation, as was the district court, and its judgment must be affirmed.

AFFIRMED.