**RAP, INC., Petitioner,**

**v.**

**DISTRICT OF COLUMBIA COMMISSION ON HUMAN RIGHTS, Respondent.**

**No. 83–1348.**

District of Columbia Court of Appeals.

Argued July 24, 1984.

Decided Dec. 10, 1984.

Charles J. Simpson, Jr., Washington, D.C., for petitioner.

William J. Earl, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Charlotte Brookins-Pruitt, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before NEBEKER and BELSON, Associate Judges, and GALLAGHER, Associate Judge, Retired.

BELSON, Associate Judge:

The District of Columbia Commission on Human Rights held that RAP, Inc., had violated D.C.Code § 1–2512(a)(1) (1981) by discharging its employee Senetra Rose for a discriminatory reason based on her sex.[1] RAP petitions for review of the Commission's ruling. Because it must be concluded on the record before us that Ms. Rose failed to prove that RAP's stated reason for discharging her was a pretext for discrimination, we reverse.

Senetra Rose and her husband, Greg, were both employees of RAP, Inc., a private nonprofit organization that provides rehabilitative programs to drug users and others. Ms. Rose worked as an executive secretary at one RAP location, Mr. Rose as a counselor at another.

One evening, after her work day was over, Ms. Rose came to the RAP building where her husband worked to pick up their car. She could not start the car. The evidence conflicted as to whether she then had Mr. Rose paged, or he saw her in the street and came out of his own accord.

Mr. and Mrs. Rose then got into a heated argument. Both were shouting and swearing. A physical tussle ensued. The Commission credited witnesses who said that Mr. Rose initiated physical contact by shoving Ms. Rose, knocking her to the ground. It is uncontested that Ms. Rose then drew a hawk-billed knife from her purse and swung it at Mr. Rose. She testified that she swung the knife at him because she "was going to cut him. Those were my intentions." When asked whether she had said she was going to kill him, she testified,

---

1. The Commission did not specify which code section RAP had violated, but it clearly intended to find a violation of § 1–2512(a)(1). That section reads in relevant part:

   § 1–2512. Unlawful discriminatory practices in employment.

   (a) *General.*—It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, physical handicap, matric-

   ulation, or political affiliation, of any individual:

   (1) To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee ....

"I could have. I was just that mad; I could have." Mr. Rose and Pharis Williams, a RAP employee who had watched the incident, restrained Ms. Rose and took the knife from her. Mr. Rose had a screwdriver or pair of pliers in his possession, but there was no evidence he used either as a weapon.

Pharis Williams, whose testimony the Commission did not credit, stated that Mr. Rose did not shove Ms. Rose and that Mr. Rose did not act aggressively but rather acted in self-defense.

RAP's executive director, Ron Clark, investigated the incident, obtaining the Roses' and other employees' accounts of what had happened. Clark determined that both Mr. Rose and Ms. Rose had violated a RAP employment rule. The rule, which is in the employee manual, prohibits "physical violence or threats of physical violence." The manual states that "[a]ny ... employee ... is subject to immediate expulsion from RAP, and immediate dismissal from employment" for violating the rule.

Clark decided that RAP should discharge Ms. Rose and reprimand Mr. Rose. Clark testified at the hearing that the evidence he gathered indicated that Mr. Rose had acted primarily in self-defense. While Mr. Rose's conduct had been deplorable, it had not been as bad as Ms. Rose's: Ms. Rose had used a dangerous weapon. He viewed the parties as equally at fault up to the point that Ms. Rose introduced the knife into the altercation. Her use of the weapon convinced him to discipline the two employees differently, he testified.

Ms. Rose filed a complaint, alleging that RAP had been motivated by illegal discriminatory intent in firing her while merely reprimanding her husband. The Commission ruled in her favor and awarded her damages.

The Supreme Court has set out the order and burdens of proof for a claim of disparate treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1982). This court generally follows the Title VII analysis in discrimination cases brought under our Human Rights Act. *See Greater Washington Business Center v. District of Columbia Commission on Human Rights*, 454 A.2d 1333, 1338 (D.C.1982); *Newsweek Magazine v. District of Columbia Commission on Human Rights*, 376 A.2d 777, 789 (D.C.1977).

██ The proof proceeds in three steps. First, the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). This burden is "not onerous." *Id.* at 253, 101 S.Ct. at 1094. The prima facie case raises a presumption that the employer's action, if otherwise unexplained, was more likely than not based on a consideration of impermissible factors. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

██ The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The defendant need not persuade the fact-finder that the proffered reason was the actual motivation for the employment action. The employer need only raise a genuine issue of fact as to whether it discriminated against the plaintiff. *Burdine, supra*, 450 U.S. at 254–55, 101 S.Ct. at 1094–95; *Board of Trustees v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (per curiam).

██ Finally, the plaintiff must show that the employer's proffered reason was in fact a pretext for discrimination. *McDonnell Douglas, supra*, 411 U.S. at 804, 93 S.Ct. at 1825; *Greater Washington Business Center, supra*, 454 A.2d at 1338. The plaintiff always retains the ultimate burden of persuading the court or agency that she has been a victim of intentional discrimination. She may prove pretext "either directly by persuading the court that a discriminatory reason more likely motivat-

ed the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ The Commission in the instant case held that Ms. Rose had proven a prima facie case at the first step, that RAP had not articulated a legitimate nondiscriminatory reason at the second step, and that Ms. Rose had proved pretext at the third step. We must accept the agency's findings of fact if they are supported by substantial evidence, D.C.Code § 1–1510(a)(3)(E) (1981), and we must decide all relevant questions of law. *Id.* § 1–1510(a)(1).

Ms. Rose argued, and the Commission agreed, that she had proven a prima facie case of discrimination by showing that RAP treated its two similarly situated employees differently. The Commission cited *Rohde v. K.O. Steel Castings, Inc.,* 649 F.2d 317 (5th Cir.1981), which held that an employee proves a prima facie case when she shows that "two employees were involved in or accused of the same offense and are disciplined in different ways." *Id.* at 322. The agency believed that Mr. Rose's conduct had been just as reprehensible as Ms. Rose's, or more so. Thus the two had been involved in, and should have been accused of, the same offense. The agency concluded that the difference in the sanctions meted to each supported a prima facie case of discrimination.

RAP argues that Mr. and Ms. Rose were not involved in the same offense. She used a weapon and he did not. Thus, RAP contends, it did not discipline two similarly placed employees differently; it disciplined two differently placed employees differently. RAP concludes that no inference of discrimination could arise from its action.

As the Supreme Court explained in *Furnco Construction Corp. v. Waters, supra,* 438 U.S. at 577, 98 S.Ct. at 2949, the prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." The Supreme Court has also made it clear that the trier of fact is to apply a preponderance of the evidence test at this stage; thus requiring consideration of an employer's showing that the two employees had not committed the same offense. Given the particular facts of this case, in which RAP has tendered an explanation for its course of conduct that relates directly to the details of the incident giving rise to the employment action, our analysis of the first of the three stages identified in *Burdine, supra,* 450 U.S. at 252–56, 101 S.Ct. at 1093–95, necessarily merges with our analysis of stage two (employer's articulation of a legitimate nondiscriminatory reason) and stage three (employee's showing that the reason is pretextual).[2] We therefore turn directly to our review of the Commission's holding, abandoned on appeal, that RAP failed to proffer a legitimate, nondiscriminatory reason for its decision to discipline the Roses differently.

RAP's executive director stated in his memoranda to the Roses, in his subsequent position statement on the complaint and in his hearing testimony that he imposed different sanctions because Ms. Rose used a weapon and Mr. Rose did not. The Commission held that his justification "is simply neither adequate nor convincing."

■ Behind the Commission's holding may lurk a misconception of the employer's burden at the second stage of the proof of a disparate treatment case. The employer need not "convince" the decision-maker

---

2. In the particular circumstances of this case, our merger of these issues in effect gives the employee the benefit of a favorable ruling at stage one.

Compare RAP's responses with the employer's responses in *Rohde, supra,* 649 F.2d 317. In *Rohde,* the employer's proffered reason for dis-

ciplining differently two employees who were involved in a fight was not, as here, that the employees' roles in the fight were different, but rather a reason unrelated to the fight, *viz.,* that one employee's general work record was good and the other employee's was not. *Id.* at 319.

that its proffered reason was the actual reason for the employment decision. The employer "is not required to prove by a preponderance of the evidence the existence of the nondiscriminatory reason for the action. Rather, the defendant 'need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.'" *Greater Washington Business Center, supra,* 454 A.2d at 1338 (quoting *Burdine, supra,* 450 U.S. at 257, 101 S.Ct. at 1096).

RAP's proffered reason, that it fired Ms. Rose because she had used a weapon and it merely reprimanded Mr. Rose since he had not, was based on admissible evidence and would have supported a Commission conclusion that RAP had not acted with discriminatory intent. Indeed, the Commission concedes in its appellate brief that RAP's showing satisfied its burden at the second stage of the proofs. We agree and so reject this aspect of the Commission's holding.

Finally, we must evaluate the Commission's ruling that RAP's reliance on Ms. Rose's misconduct as grounds for dismissal was a pretext for discrimination. As we noted above, a plaintiff may prove pretext either directly, by showing that a discriminatory reason more likely motivated the action, or indirectly, by showing that the employer's proffered reason for the disparate treatment is unworthy of credence. *Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095.

The Commission made no direct findings on discriminatory motivation, so its holding of pretext must be based on a conclusion that RAP's proffered explanation was not worthy of credence. We hold that the record does not support the Commission's implicit decision to that effect.

The witnesses to the Roses' fight disagreed completely on the facts. Ms. Rose and other witnesses testified that Mr. Rose shoved Ms. Rose to the ground, thereby initiating the physical violence, and that he was very aggressive and threatening throughout the incident. Pharis Williams testified that Mr. Rose did not shove Ms. Rose, but acted in self-defense. Mr. Rose apparently also gave Mr. Clark an account of the incident that tended to justify his behavior, although he did not testify before the Commission.

The Commission accepted the first version of the facts. It therefore concluded that Mr. Rose deserved just as severe a punishment as Ms. Rose. We accept, as supported by substantial evidence, the Commission's findings on the shoving and on Mr. Rose's generally aggressive behavior.[3] If RAP, after its investigation, believed Pharis Williams and Mr. Rose in these details, RAP may have made a mis-

---

3. We cannot accept several subsidiary findings that led the Commission to conclude that Mr. Rose was at least as culpable as Ms. Rose. These findings were not supported by substantial evidence. For example, the agency emphasized that when Mr. Rose came out to the street he violated the employer's policy against employees leaving their posts during working hours. The Commission regarded this as a grave infraction and a major reason why Mr. Rose was more at fault than Ms. Rose. But we have found no evidence that the policy existed, or that if it did exist this would not have been considered a minor infraction. There is no explicit statement of the policy in the employee manual and no one mentioned it at the hearing. The agency also found that Mr. Rose's violation of the rule against violence was more serious than Ms. Rose's because he, as counselor, had a greater obligation than she, a secretary, to set a good example. Again, the employee manual does not say that the rule against violence applies in varying degrees to different sorts of employees. Nor did anyone testify to that effect.

Our conclusion that these findings are unsupported undermines the Commission's position that RAP could not credibly have concluded that Ms. Rose was more culpable than Mr. Rose. As the evidence supporting the Commission's conclusions on relative fault becomes less weighty, RAP's contrary conclusions become worthier of credence. Even if all the Commission's findings were supportable, however, RAP's contrary findings would still have found support in the "record" before RAP when it took its employment actions, based as they were on the statements of Pharis Williams and other employees.

take in its evaluation of the evidence. But a mere mistake is not a pretext.[4] The fact that the Commission disagrees with the employer's findings does not show that the employer's reason, based on the employer's supported findings, is unworthy of belief. The Commission erred in ruling implicitly that its own conclusions on the course of the incident meant necessarily that RAP's contrary conclusions were pretextual.[5]

There is another more specific reason we must reverse the agency's conclusion on pretext, however. Whatever RAP believed about Mr. Rose's conduct during the fight, it determined that Ms. Rose had used a knife and he had not. The evidence that she used a weapon was uncontested. Indeed, the Commission found that Ms. Rose "initiated the threat of *armed* violence" (emphasis supplied) with her knife while he initiated only unarmed violence with his shove. She testified that she swung the knife because she intended to cut him. Un-der the criminal law, Ms. Rose could have been charged with a felony (assault with a dangerous weapon, D.C.Code § 22–502 (1981)), while Mr. Rose could have been charged only with a misdemeanor (assault, *id.* § 22–504). While the Commission appears to have concluded that her action was in self-defense and justifiable, the Commission's error again was in failing to appreciate that RAP could reasonably have accepted a different view of the facts involving Ms. Rose's use of the knife, and that an employment action rationally based on RAP's perception of the incident would not have been pretextual.

In view of the foregoing, we hold the record does not support the Commission's conclusion that RAP must have discriminated because the reason RAP gave for its discipline was not worthy of credence. Ms. Rose failed, on this record, to sustain her burden of persuasion on pretext at the third step of her case.[6] We therefore re-

---

4. *See, e.g., Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1256 (5th Cir.1977) (supervisor's bona fide belief, even if wrong, that one employee violated work rule which other employee did not, rebuts charge of discrimination, so long as belief is credible), *overruled in part, Burdine v. Texas Dept. of Community Affairs,* 647 F.2d 513, 514 (5th Cir.1981) (employer has only burden of production, not burden of persuasion); *Hicks v. Sears, Roebuck & Co.,* 503 F.Supp. 930, 931, 938 (E.D.Pa.1980) (even if supervisor was mistaken that employee was intoxicated, good faith belief of rule infraction is nondiscriminatory explanation for discharge). We stress that the employer's belief that one employee's conduct is more serious and deserves a harsher response, must be a *credible* belief. It cannot be a sham or pretext. Moreover, the plaintiff has the opportunity to prove directly "that a discriminatory reason more likely motivated the employer." *Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095.

5. It was, of course, entirely appropriate for the Commission to make findings of fact concerning the events in question. But the function of such factfinding was to serve as a benchmark for the Commission's determination whether RAP's given reasons for its personnel actions were worthy of credence.

The Commission's determination of what happened in the fracas, *i.e.,* that Mr. Rose was at least equally at fault, was misused by the Commission as the direct and only basis for deter-mining whether RAP's discharge of Ms. Rose was pretextual.

6. Alternatively, the same result is reached if, instead of merging the three steps of the *Burdine* analysis, we focus on the first step of plaintiff's case and find that no disparate treatment was proffered to establish a prima facie case. Mr. and Ms. Rose are not similarly situated since the "apparent disparity of treatment arose because of the disparity of conduct." *Green v. Armstrong Rubber Co.,* 612 F.2d 967, 968 (5th Cir.), *cert. denied,* 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102 (1980). In *Green,* two employees, one white, the other black, engaged in a fight at work. The black employee, who slashed his white co-worker with a knife-like tool, was discharged for violating a no-fight rule, while the white employee was only suspended. *Id.* at 967–68. Although the matter was disputed, the court ruled that the discharged employee was the aggressor. Yet, "even had an act of violence occurred, or was threatened, the [discharged employee] was not justified in reacting in such a dangerous fashion." *Id.* at 968. The Court determined that a prima facie case was not made out. *Id.* Accord, B. Schlei & P. Grossman, Employment Discrimination Law 597 n. 19 (2d ed. 1983) (*Green* can be decided either on basis of failure to establish prima facie case or on basis that prima facie case was made but rebutted by the employer's showing of nondiscriminatory reason). Similarly, under either analysis, Ms. Rose has not met her burden of proof.

verse the Commission's decision that RAP discharged her in violation of D.C.Code § 1–2512(a)(1).

*Reversed.*