**UNITED PLANNING ORGANIZATION, Petitioner,**

v.

**DISTRICT OF COLUMBIA COMMISSION ON HUMAN RIGHTS, Respondent.**

No. 86–844.

District of Columbia Court of Appeals.

Argued June 4, 1987.
Decided Aug. 19, 1987.

Lawrence E. Williams, Jr., Washington, D.C., for petitioner.

Victor E. Long, Asst. Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before PRYOR, Chief Judge, and MACK and BELSON, Associate Judges.

PRYOR, Chief Judge:

Petitioner, United Planning Organization (UPO), seeks review of a decision and order of the District of Columbia Commission on Human Rights (the Commission) in which the Commission found that UPO had discriminated on the basis of sex against one of its employees, Gloria J. Briscoe, thereby violating the D.C. Human Rights Act of 1977. D.C. Code §§ 1–2501 *et seq.* Our reading of the record convinces us that the Commission's finding of discriminatory intent and its conclusion that UPO violated the D.C. Human Rights Act are supported by substantial evidence and in accord with relevant law in this jurisdiction. Accordingly, we affirm.

## I

On June 2, 1977, Ms. Briscoe was one of forty-three applicants for the vacant position of budget analyst at UPO. Four of the applicants, including Ms. Briscoe, were already employed by UPO at the time they applied for the position. The interrelations among these four internal or "in-house" candidates—Johnny Holloman, Gloria Briscoe, Florence Klink, and Arthur Gray—and the UPO employee in charge of the hiring process, William Isaac, head of UPO's Financial Division, are noteworthy. Mr. Isaac directly supervised both Mr. Holloman and Ms. Klink, while Ms. Klink was the direct supervisor of Ms. Briscoe. Mr. Gray's supervisor, Winona Gee, had no input in the employment decision-making at issue here. The posted qualifications for the position were a degree in business administration or accounting, plus two years of experience in budgetary or accounting work or three years of college-level study in business administration or accounting, plus three years of experience in budgetary or accounting work.

Gloria J. Briscoe was hired by UPO on March 10, 1966. During the time before she was turned down for the budget analyst position, Ms. Briscoe held the positions of clerk-typist (March 1966–December 1967), junior contract auditor (December 1967–November 1968), and voucher auditor (December 1968–September 1977). Ms. Briscoe's performance ratings were excellent in five categories, good in fifteen categories, and average for attendance and punctuality. She had earned an A.A. degree from Washington Technical Institute in 1975, and had completed three years of course work toward a B.A. degree in business administration at the University of the District of Columbia; this degree was awarded to Ms. Briscoe in May 1978. Ms. Briscoe was recommended by her supervisor for a Superior Performance Award in 1978 for her work in 1977. The recommendation was never acted upon because the documentation was lost. Ms. Briscoe did testify that she had no direct budgetary experience.

Johnny Holloman initially was hired by UPO in November 1965. From 1965 until 1971, he held the positions of clerk-typist, payroll clerk, financial clerk-typist; from April 1971 to October 1974, he held the position of junior reports specialist; and finally, from October 1974 until his selection for the budget analyst position, he was a senior contracts auditor. Mr. Holloman's performance ratings were excellent in twelve categories. By June 1977, Mr. Holloman had an A.A. degree in accounting from the Washington Technical Institute and had completed forty-three credits of course work toward a B.S. degree in accounting from the University of the District of Columbia. The degree was awarded in 1978. In addition, Mr. Holloman was awarded the Superior Performance Award by the Incentive Awards Committee.

Of particular significance, the evidence reveals that the UPO employee who would supervise the new budget analyst, Mr. Francis Odu-Thomas, remarked on at least three occasions that he preferred to hire no more women in the Budget Section because women with children find it difficult to work overtime. Ms. Briscoe and her supervisor, Ms. Florence Klink, who also was under consideration for the new vacancy, informed Isaac of Mr. Odu-Thomas' remarks prior to Isaac's selection of Mr. Holloman. Although Mr. Odu-Thomas had little formal input in the decision-making process, the evidence is clear that a factor Isaac took into consideration before choosing Mr. Holloman was the ability of each candidate to get along with the supervisor of the budget analyst position, Mr. Odu-Thomas. Mr. Isaac testified that as between Holloman and Briscoe, Holloman would get along better with Odu-Thomas.

Following a process of interviewing, evaluating, and ranking of the candidates, UPO selected Mr. Holloman for the position of budget analyst. Mr. Holloman's promotion and resultant salary increase were made retroactive to March 1977. When Ms. Briscoe was informed that she had not been chosen for promotion, she was invited to apply for the position of senior contract auditor, the position vacated by Johnny Holloman. After initially

refusing the invitation, she did apply and received a promotion to that position effective September 19, 1977.

Gloria Briscoe filed a sex discrimination complaint with the Commission against her employer, UPO, after she was passed over for a promotion to the position of budget analyst. The action was commenced on December 2, 1977 and, on June 6, 1978, the Commission found probable cause to initially sustain her complaint. Hearings began on June 10, 1981 and were concluded on July 7, 1981; the hearing examiner did not issue its proposed decision, finding that UPO had practiced unlawful sex discrimination, however, until January 11, 1985.[1] UPO filed exceptions to the proposed findings, and on October 22, 1985, the Commission issued a final decision in which it found that UPO had indeed established legitimate, nondiscriminatory reasons for promoting Mr. Holloman. Ms. Briscoe filed a Motion for Reconsideration of the Final Decision and UPO filed an opposition thereto. On March 28, 1986, the Commission reversed itself, vacating its October 22, 1985 Final Decision and reinstating the January 11, 1985 Proposed Decision.

## II

The standard of review we are to employ in this type of case is well established. "This court must accept the decision of the Commission if it is supported by substantial evidence and is in accordance with relevant law. D.C. Code § 1–1510(a)(3)(E); 'Substantial evidence is "more than a mere scintilla." It means such relevant evidence as a reasonable mind might accept as ade-

quate to support the conclusion.' If the Commission's decision is supported by substantial evidence and is in accordance with applicable law, the decision must be affirmed, even if this court would have reached a different decision on the same record." *Atlantic Richfield Co. v. District of Columbia Commission on Human Rights,* 515 A.2d 1095, 1098 (D.C.1986) (citations omitted) (discrimination on basis of personal appearance). Further, we note that the Supreme Court has stated clearly that discriminatory motivation, although the ultimate issue in a discrimination case, is still a question of fact. *Pullman-Standard v. Swint,* 456 U.S. 273, 289–90, 102 S.Ct. 1781, 1790–91, 72 L.Ed.2d 66 (1982). *See Bishopp v. District of Columbia,* 252 U.S. App. D.C. 156, 788 F.2d 781 (1986).

This court generally follows the analysis associated with Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (1982) in discrimination cases brought under the D.C. Human Rights Act.[2] *See RAP Inc. v. District of Columbia Commission on Human Rights,* 485 A.2d 173, 176 (D.C. 1984) (discrimination on the basis of sex). In assessing the soundness of the Commission's decision, we must analyze the case from the perspective of the now familiar three-step model for allocation of the burdens of proof between the parties. *Id.* First, although

[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff....

---

1. We note that more than seven years passed between the initial filing of the complaint and the filing of the proposed decision. As we have noted before and reiterate today, such delays are unreasonable and deserving of harsh criticism; a party's right to fair adjudication is seriously jeopardized by procedures that drag out interminably, dimming memories and dampening spirits. *Wisconsin Avenue Nursing Home v. District of Columbia Commission on Human Rights,* 527 A.2d 282 (D.C.1987); *Stevens Chevrolet, Inc. v. Commission on Human Rights,* 498 A.2d 546 (D.C.1985).

2. D.C. Code § 1–2512(a)(1) (1981) prohibits employment discrimination against persons in cer-

tain protected classes including women. The applicable provision states in part:

(a) *General.*—It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, physical handicap, matriculation, or political affiliation, of any individual:

(1) To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion....

The employee bears the initial burden of establishing by a preponderance of the evidence a *prima facie* case of discrimination.

*Atlantic Richfield, supra,* 515 A.2d at 1099 (citations omitted). The plaintiff's *prima facie* case creates a rebuttable presumption of unlawful discrimination, thereby shifting the burden of production to the employer. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To rebut the presumption, the employer must articulate "some legitimate, nondiscriminatory reason for the employment action at issue." *Atlantic Richfield, supra,* 515 A.2d at 1099. The employer is not required to establish its actual motivation in taking the action it did; rather, it is enough for the employer to produce "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine, supra,* 450 U.S. at 257, 101 S.Ct. at 1096; *Atlantic Richfield, supra,* 515 A.2d at 1100. Finally, once the employer produces such evidence, the employee must be afforded a "fair opportunity to prove by a preponderance of the evidence that the employer's stated reason for its action was not its true reason but was in fact merely a pretext for discrimination." *Atlantic Richfield, supra,* 515 A.2d at 1100; *RAP, Inc., supra,* 485 A.2d at 176; *Burdine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095. The employee may meet this burden in either of two ways: by persuading the trier of fact through direct evidence that "a discriminatory reason more likely motivated the employer" or "indirectly by showing that the employer's proffered explanation is unworthy of credence." *Atlantic Richfield, supra,* 515 A.2d at 1100; and *RAP, Inc., supra,* 485 A.2d at 176–77. "[R]eliance upon some indirect or circumstantial evidence is plainly permissible," and when the plaintiff "successfully makes out a *prima facie* case and discredits the defendants' purported explanation, she has carried her ultimate burden." *King v. Palmer,* 250 U.S. App. D.C. 257, 258, 778 F.2d 878, 879, *reh'g denied* (1985).

### III

The Commission held that Ms. Briscoe had established a *prima facie* case of discrimination,[3] that UPO had articulated a legitimate, nondiscriminatory reason for its decision not to promote Ms. Briscoe to the position of budget analyst, but that Ms. Briscoe had shown her employer's proffered reason for its employment decision was pretextual.

It is here uncontested that a *prima facie* case of discrimination was established. Rather, UPO advances three arguments. First, UPO asserts that the Commission's finding that Mr. Holloman and Ms. Briscoe were comparably qualified is not supported by substantial evidence. Second, UPO claims that it not only articulated but also established by the overwhelming weight of the evidence that it had a legitimate, nondiscriminatory reason for promoting Mr. Holloman. Finally, UPO argues that the Commission's finding of pretext is arbitrary and not supported by substantial evidence. In a separate but inextricably related claim, UPO argues that the Commission misconstrued the employer's second-step burden of production as articulated in *RAP, Inc., supra,* by concluding from its finding of comparable qualifications that UPO's decision not to promote Ms. Briscoe was pretextual. We treat each issue in turn.

Our review of the record in this case convinces us that the Commission's factual finding of comparable qualifications is supported by substantial evidence. Both Mr. Holloman and Ms. Briscoe had been employed for approximately eleven years; both held A.A. degrees from the same institution; both would complete bachelor's degrees within the same time frame, again from the same institution; while each had

---

**3.** To set out a *prima facie* case of discrimination, the complainant must prove four elements: (1) that she was a member of a protected class; (2) that she applied for a job for which she was qualified; (3) that she was rejected in favor of another applicant; and (4) that a substantial factor in the employment decision was her membership in the protected class. *See, e.g., King v. Palmer, supra,* 250 U.S. App. D.C. at 259, 778 F.2d at 880.

different specific work experience, both had been exposed to the accounting and budgetary practices of the office for a number of years. The testimony of Mr. Isaac and Ms. Klink regarding the relative qualifications of each of the candidates was in conflict, and the hearing examiner chose to credit Ms. Klink. We see no reason to overturn the Commission's credibility determination.[4]

UPO asserts that it both articulated *and* established a legitimate, nondiscriminatory reason for promoting Mr. Holloman rather than Ms. Briscoe to the position of budget analyst. We find that in making this argument, UPO has conflated the second and third levels of analysis required when applying the model for examination of discrimination cases. The second step of the analytic model enables the employer to articulate—not prove—that it took the action it did for a legitimate nondiscriminatory reason. Once such a reason has been stated, the burden shifts back to the complainant, creating for her an opportunity to discredit the employer's proffered explanation or establish that the explanation is a pretext for actual discrimination. It is conceptually premature at the second stage of this orderly march of proof to establish lack of discriminatory intent. Accordingly, we treat this aspect of UPO's argument as equivalent to its third argument—that the record lacks substantial evidence for the Commission's finding of pretext.

■ We agree that UPO met its burden of production by articulating that it promoted Mr. Holloman but not Ms. Briscoe to the position of budget analyst because it determined that Mr. Holloman was more qualified for the position. The record before us reveals that UPO's stated reason

for hiring Holloman over Briscoe was based on a comparison of the two applicants with respect to a five-point assessment model. The model itself is not challenged. Using the model, Mr. Isaac ranked the candidates according to education, seniority, ability to apply knowledge and comprehension, knowledge of budget analyst responsibility, and ability to complete work. Mr. Isaac ranked the four "in-house" candidates for the position in the following order of preference: Holloman, Klink, Gray, and Briscoe. According to Mr. Isaac, he determined that Holloman had six years of budget experience and Briscoe had no budget experience; Holloman worked independently and quickly, but Briscoe did not; Holloman completed his work during regular business hours, but Briscoe did not; Holloman did not have a history of tardiness or absenteeism, while Briscoe did. Regardless of whether any of these determinations were true, they did amount to an adequate statement of a legitimate nondiscriminatory reason for promoting Mr. Holloman.

■ The crux of the matter, then, lies in the Commission's finding that UPO's stated reason for failing to promote Ms. Briscoe amounted to a pretext for discrimination against her because of her gender. Contrary to UPO's assertion that the Commission's finding of pretext arises directly from its finding that the two candidates were comparably qualified, we hold that such is not the case. There is to be sure some language in the Commission's final decision suggesting that the decision rests, in part, on its determination that the complainant and the successful job applicant exhibited comparable qualifications.[5] As noted by the Commission, however:

> Isaac's testimony, Ms. Klink's testimony rises to a position of uncontested credibility, and the Commission's finding of comparable qualifications of the candidates stands on even firmer ground.

4. At oral argument, petitioner makes an even more ambitious claim, and suggests that we could analytically sidestep the credibility issue by disregarding all of Mr. Isaac's testimony. If we were to do so, petitioner claims, the remaining evidence would compel a finding that Holloman was more qualified than Briscoe for the budget analyst position. We note that such analytical surgery amounts to a gross disturbance of the integrity of the record, a record we are to consider in its totality. We further note that petitioner's suggestion is futile—without Mr.

5. The Commission noted it was persuaded "that the hearing examiner's credibility determinations are valid and dispositive of the credible worthiness [sic] of the respondent's proffered explanation for the denial of promotion." Ruling on Motion for Reconsideration of Final De-

The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination.

*Burdine, supra,* 450 U.S. at 259, 101 S.Ct. at 1097 (citations omitted).

Therefore, while the Commission's finding that both applicants were comparably qualified may not, without more, serve to undercut the credibility of the employer's determination that the applicants were not comparable, it is probative evidence on the issue of pretext. *Id.: see also RAP, Inc., supra.* The Commission may not use its own determination of the relative qualifications of the applicants as the direct and only basis for its determination that UPO's refusal to promote Ms. Briscoe was pretextual. *Id.* at 179 n. 5. So long as UPO's determination that Mr. Holloman was better qualified was a reasonable view of the facts, it will suffice to meet the employer's second-step burden of production. In other words, demonstrating discriminatory intent and pretext requires more than merely showing that the employer was mistaken.

We note, however, that the Commission's decision extended beyond this observation and squarely rests on other evidence of discriminatory intent. The Commission asserted that it "does not second guess the respondent's judgment of the candidate's qualifications, but rather concludes that the selection decision was based on improper considerations that did not include such a judgment of qualifications.... The complainant ... succeeded in introducing evidence sufficient to persuade the Commission that the respondent's explanation was a pretext, and that the evidence offered by the respondent was unworthy of credence and therefore incapable of raising a genuine issue of fact." Ruling, *supra,* at 4.

We find, therefore, that Ms. Briscoe presented evidence to the Commission tending to discredit UPO's explanation for its employment decision and, thereby established that UPO's decision was pretextual. In affirming the hearing examiner's January 11, 1985 Proposed Decision and Order, the Commission found that Mr. Isaac's testimony was both internally inconsistent and inconsistent with the testimony of other witnesses, and as a result, Mr. Isaac's credibility was called into question. The hearing examiner also noted that there was "evidence of a predisposition on the respondent's part to discriminate against members of her protected class." Proposed Decision and Order, at 17, January 11, 1985. The Commission affirmed the hearing examiner's basis for such predisposition: The supervisor of the vacant position, Mr. Odu-Thomas, made repeated statements to the effect that he preferred that the position be filled by a male applicant; Mr. Isaac was aware of these remarks, and admitted that getting along with Mr. Odu-Thomas was a relevant consideration in arriving at his decision to promote Mr. Holloman; the Commission found Isaac may have allowed the remarks to influence his selection; Briscoe suffered adverse treatment not suffered by male employees; and Briscoe was passed over for incentive awards she deserved; Briscoe was subjected to a written warning that alleged omissions and commissions, but other than the testimony of Isaac, whose credibility on other issues is questionable, no evidence was adduced by the respondent to support the charges. The Commission then concluded "that the respondent's proffered explanation for the denial of promotion to the complainant is unworthy of credence, and that a discriminatory reason based on the complainant's sex more likely motivated the respondent." *Id.* at 19.

cision and Order, at 3, March 28, 1986. Further, the Commission noted that it "interprets the apparent equality of qualifications as a fact tending to rebut the respondent's contention that the qualifications were unequal. The alleged superiority of the selectee's qualifications was the only reason articulated by the respon-

dent for the complainant's non-selection. In the absence of any other legitimate nondiscriminatory explanation, the Commission is persuaded that the evidence of other circumstances tending to raise the inference of discrimination is sufficient to sustain the complainant's ultimate burden of proof." *Id.* at 4.

"*Burdine* makes it absolutely clear that a plaintiff who establishes a *prima facie* case of intentional discrimination and who discredits the defendants' rebuttal should prevail, even if he or she has offered no direct evidence of discrimination." *King v. Palmer, supra,* 250 U.S. App.D.C. at 260, 778 F.2d at 881. It is equally clear that a finding of discriminatory intent will not be discounted unless not supported by substantial evidence. *Bishopp v. District of Columbia, supra,* 252 U.S. App. D.C. at 160, 788 F.2d at 785–86. Because substantial evidence in the record supports the Commission's finding, we hold that Ms. Briscoe did meet her burden of persuasion by demonstrating that UPO's proffered reason was not the true reason for the employment decision.

Affirmed.