OTTENBERG'S BAKERS,
INC., Petitioner,

v.

DISTRICT OF COLUMBIA COMMIS-
SION ON HUMAN RIGHTS, Re-
spondent,

Laverne Robinson, Intervenor.

No. 01–AA–669.

District of Columbia Court of Appeals.

Argued March 5, 2002.

Decided March 8, 2007.

Jerry A. Moore III, with whom Elizabeth Torphy–Donzella was on the brief, Washington, for petitioner.

Robert R. Rigsby, Corporation Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corporation Counsel at the time the brief was filed, and Sheila Kaplan, Assistant Corporation Counsel, filed a statement in lieu of brief, for respondent.*

Tina M. Maiolo, with whom Thomas L. McCally was on the brief, Washington, for intervenor.

Before WASHINGTON, Chief Judge,** and WAGNER and STEADMAN, Senior Judges.***

PER CURIAM:

Petitioner, Ottenberg's Bakers, Inc. (the employer or company), petitions for review of a decision of the District of Columbia Human Rights Commission (DHR or Commission) awarding intervenor, Laverne Robinson, a former employee, damages and other relief it found to have been caused by the wrongful termination of his employment. The employer argues that the Commission's order is not supported by substantial evidence or in accordance with law, specifically with respect to its finding of pretext.[1] It also contends that Robinson is not entitled to relief because he unreasonably refused a prompt and unconditional offer of the position he was denied initially. Finally, the employer challenges various elements of the damages awarded as illegal, beyond the Commission's jurisdiction, unconstitutional, or beyond the period of limitations. We sustain the Commission's finding on liability, vacate the award of damages for the reasons specified herein and remand to the Commission for a determination of damages consistent with this opinion.

I.

A. *Factual Summary*

The facts underlying Robinson's claims as found by the Commission are as follows.

* On May 26, 2004, the Office of Corporation Counsel of the District of Columbia was renamed the Office of the Attorney General of the District of Columbia. *See* Mayor's Order 2004–92, 51 D.C.Reg. 6052 (2004).

** Judge Washington was an Associate Judge at the time of argument. His status changed to Chief Judge on August 6, 2005.

*** Judge Wagner was Chief Judge at the time of argument. Her status changed to Senior

Judge on December 21, 2005. Judge Steadman was an Associate Judge at the time of argument. His status changed to Senior Judge on October 18, 2004.

1. Robinson concedes that there is no claim based on the theories of constructive discharge or hostile work environment.

The employer hired Robinson as a "swing man" in February 1991, with the intention of making him a Regional Manager when the position became available. Robinson began working as Regional Manager in July 1991, and his pay increased from $21,320 to $40,000 per annum. In July 1992, Robinson and Jim Sonne, another Regional Manager, were promoted to Division Sales Managers under the supervision of Wolfgang Kulp.[2] In 1993, Robinson received a pay increase from $42,000 to $43,260 per year, and Sonne received a pay increase and a $750 bonus.[3] In a company reorganization in May 1994, both Robinson and Sonne were promoted to Sales Managers, again under the supervision of Kulp.[4] That same year, Robinson received an overall evaluation of having exceeded standards of expectations. During a sales meeting on February 23, 1995, Kulp commended Robinson and Sonne for their work and said that he would try to secure bonuses for them. Sonne inquired about a reorganization chart that was in the meeting room which showed Regional Manager Positions, but no Sales Manager positions. Although generally aware that there would be a reorganization, Kulp had no actual knowledge of the details, and he did not tell Robinson and Sonne that their Sales Manager positions would be eliminated. Sonne mentioned that he could not travel, and therefore would not really want a position as Sales Manager, but that he would take a Regional Manager position. Robinson made a statement to the effect that he would not be interested in the Regional Manager position if it was like it was when he was a Regional Manager; however, he did not say that he would refuse the position if offered. Kulp later told Mary Jollett, Vice President of Marketing, and Bill Walker, the Director of Human Resources, about Robinson's statement concerning his reservation about the position. After the meeting, Sonne told Robinson that Jollett had told him a week earlier that the Sales Manager positions would be eliminated.

The employer's initial plan was to offer Regional Manager positions to both Robinson and Sonne. Jollett, who presented the proposed reorganization plan, told Lee Ottenberg, one of the company's owners, that the sales positions held by Robinson and Sonne would be eliminated and replaced by Regional Manager positions. The Commission found that Jollett told Lee Ottenberg that Robinson had told Kulp "very strongly that he was not interested in working as a Regional Manager," and she recommended that Sonne be offered the position and that Robinson be terminated.[5] The decision on who would fill the new positions was reached by consensus among Lee Ottenberg, Kulp and Jollett. Lee Ottenberg made the final decision to terminate Robinson without further inquiry concerning Robinson's interest in the position.

In a meeting on March 15, 1995, Bill Walker, the Director of Human Resources, informed Robinson that the Sales Manager positions were being eliminated, that two

2. In the new position, Robinson assumed responsibility for increasing the division's sales and for supervising two Regional Managers and twenty routes.

3. Robinson said he inquired about not receiving the bonus, but never received a satisfactory explanation. Since Robinson attributed any difficulties he had in performance in 1993 to a vacant position in his section, he felt that he should have received a bonus too.

4. Robinson became responsible for sales in the District of Columbia and Virginia, while Sonne was responsible for sales in Virginia only. Both were responsible for bringing in new sales.

5. Jollett said that Kulp told her that he had explained to Robinson that the Sales Manager Positions would be eliminated and that two additional Regional Manager positions would be created.

Regional Manager Positions were being created, that he was not being offered one of them, and that his employment would be terminated immediately. Jollett, who was at the meeting, explained to Robinson that he was not being offered the new position because it was known that he was not interested in it and that she knew that he would hate the job.[6] Robinson was also told that Walker and Jollett had decided that Sonne would be a better fit for the position. Jollett offered to assist Robinson to secure other employment, but he declined the offer. It is undisputed that Robinson was qualified for the Regional Manager position. Robinson concluded that he had been treated unfairly because of his race (African–American), told Jollett and Walker that he had been discriminated against, and left the meeting. At the suggestion of George Diggs, another employee, Robinson asked Walker and Jollett for a termination letter, and Walker told him that a letter would be mailed.[7] The Commission found that Robinson was no longer an employee of Ottenberg's as of that time.

A few minutes after Robinson left the meeting, Jollett thought that they had made a mistake, and she and Walker met with Lee Ottenberg to inform him. Jollett suggested, and Walker agreed, that the company should offer Robinson a position as Regional Manager. Lee Ottenberg called Ray Ottenberg, the other owner of the business, and informed him about what had happened. The next day, Walker sent Robinson a letter apologizing for the man-

ner in which the situation was handled and explaining that the decision not to offer him the position was based partly on their perception of his attitude toward the job. The letter then states that since that perception was in error, the company wanted to remedy the situation and that "Ottenberg's hereby offers you the position of Regional Sales Manager to become effective immediately upon your acceptance." Robinson did not learn of the employer's offer until the next week when he returned from New York and returned a call to Lee Ottenberg, who requested a meeting and told him that a letter had been sent offering him the Regional Manager position. A copy of the letter was faxed to him, and a meeting was scheduled.[8]

Robinson met with Lee Ottenberg on March 22, 1995, and Walker joined them during the latter part of the meeting. Lee Ottenberg told Robinson that he understood how he could conclude that discrimination had occurred and that he thought that Robinson's termination had not been handled well.[9] Robinson expressed frustration at the way his termination had been handled. He also stated his belief that if he accepted the position, he would have to be alert constantly for acts of reprisal. Lee Ottenberg tried to alleviate this concern by telling Robinson that the grievance process would be available if he accepted the job offer. Neither Ottenberg nor Walker questioned Robinson about his concerns or offered any additional suggestions for alleviating them. Robinson de-

---

6. "Running routes" was Robinson's primary concern about the Regional Manager position, and it was known that Robinson did not like that aspect of the job.

7. Diggs, also an African–American, was a Regional Manager. He had been interviewed for the position by Jollett, Lee Ottenberg, and probably Kulp, and he had competed with five or six others for the position, including two white males.

8. Robinson had not received the letter, which had been sent to an old address.

9. According to Robinson, Lee Ottenberg said that he did not believe that the company had discriminated against Robinson. However, the Commission stated it was unable to make a finding on that issue.

clined the job offer and requested a severance package, and he sent a written letter to that effect to Walker dated March 24, 1995.[10] The Commission found that if the reorganization had been explained to Robinson when it was explained to Sonne, Robinson would have accepted the Regional Manager's position.

### B. *Procedural Background*

■ Robinson filed a discrimination complaint with the Department of Human Rights and Minority Business Development (now known as the Office of Human Rights) alleging that the employer discriminated against him because of his race, African–American. After an investigation, DHR found probable cause to credit the allegations and issued a Letter of Determination (LOD) to that effect. Ottenberg's filed a motion to remand the case to DHR, contending that the LOD contained factual errors. After attempts at conciliation failed, DHR certified the case to the Commission for a public hearing.[11]

Following an evidentiary hearing, Chief Hearing Examiner Cornelious Alexander, Jr. issued a Proposed Decision and Order, finding that Ottenberg's "violated the Human Rights Act by discriminating against [Robinson] in the terms and conditions of his employment because of his race." Ottenberg's filed ninety-five (95) exceptions, and Robinson filed responses. The Commission issued a Final Decision and Order with one hundred and eight (108) factual findings affirming in material respects the hearing examiner's award.

The Commission's order required Ottenberg's to "cease and desist from engaging in disparate treatment with its African–American managers, including the hiring, promotion, and termination of such employees." The Commission also awarded Robinson the following monetary damages: $146,325 "plus adjustments in back-pay for the period of the violation; $102,500 for other financial losses representing payments on business and personal loans incurred for his initial termination; $70,000 for humiliation, embarrassment and indignity; and $30,000 for mental anguish. The Commission also ordered Ottenberg's to pay 'front pay'" for five years, less alternate employment from the time that its order became final, costs, expenses and attorney's fees related to the claim, and the Commission's costs.

### II. Liability

Ottenberg's argues that the Commission's finding of discrimination is not supported by substantial evidence or in accordance with applicable law. Specifically, it contends that the Commission erred in finding that the company's reason for terminating Robinson was a pretext for discrimination without a finding that the decision-makers' stated reason for the action was false and that discrimination was the real reason. Robinson responds that the Commission considered, but rejected the company's claimed legitimate reason and that the evidence, including evidence supporting its *prima facie* case, was more than sufficient to support the Commission's findings and conclusions.

■ Our review of the Commission's decision "is limited to determining whether the order was in accordance with the law

---

10. According to Ottenberg's records, Robinson was to receive four weeks severance pay beginning March 19, 1995, along with vacation pay.

11. "Under our Human Rights Act, whenever the Office of Human Rights finds probable cause to believe that the complainant has been the victim of unlawful discrimination, it must conduct a public hearing before a hearing examiner or a panel of one or more members of the Commission." *Harris v. District of Columbia Comm'n on Human Rights*, 562 A.2d 625, 629 (D.C.1989) (citing D.C.Code §§ 1–2545, –2550 (1987 Repl. & 1988 Supp.)) (additional citation omitted).

and supported by substantial evidence in the record." *Natural Motion by Sandra, Inc. v. District of Columbia Comm'n on Human Rights*, 726 A.2d 194, 196 (D.C. 1999) (citing *Wisconsin Ave. Nursing Home v. District of Columbia Comm'n on Human Rights*, 527 A.2d 282, 287 (D.C. 1987); *RAP, Inc. v. District of Columbia Comm'n on Human Rights*, 485 A.2d 173, 177 (D.C.1984)) (other citation omitted). We will accept the Commission's factual findings if supported by substantial evidence. *RAP, Inc.*, 485 A.2d at 177 (citing D.C.Code § 1–1510(a)(e)(E)). If its decision is supported by substantial evidence and in accordance with applicable law "the decision must be affirmed, even if this court would have reached a different decision on the same record." *See United Planning Org. v. District of Columbia Comm'n on Human Rights*, 530 A.2d 674, 676 (D.C.1987) (quoting *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095, 1098 (D.C. 1986)).

■ In reviewing discrimination cases under the District of Columbia Human Rights Act (DCHRA), we apply the familiar burden-shifting test set forth by the Supreme Court in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for cases under Title VII of the Civil Rights Act of 1964.[12] *Hollins v. Federal Nat'l Mortgage Ass'n*, 760 A.2d 563, 571 (D.C.2000) (citations omitted). Under that test: (1) the employee must first make a prima facie showing of racial discrimination; (2) if the employee succeeds in meeting that burden, the burden shifts to the employer who must then "articulate some legitimate, nondiscriminatory reason" for its employment action; (3) the burden then shifts back to the employee to show that the employer's stated reason was in fact a pretext to cover up a racially discriminatory decision. *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. 1817; *see Hollins*, 760 A.2d at 571 (outlining and applying the *McDonnell Douglas* burden-shifting formula to a case under the DCHRA, D.C.Code § 1–2501 *et seq.* (1996)).

■■ The employer does not contest the Commission's determination that Robinson made a *prima facie* showing of racial discrimination. *See Hollins, supra*, 760 A.2d at 572.[13] The burden then shifted to the employer to offer a legitimate, nondiscriminatory reason for the employment action.[14] *See id.* at 571 (citing *Atlantic Rich-*

**12.** 78 Stat. 253, 42 U.S.C. § 2000e *et seq.*

**13.** To establish a *prima facie* case of discrimination, Robinson was required to show

> (1) that he was a member of a protected class, (2) that he was qualified for the job from which he was terminated [or that he sought], (3) that his termination [or denial of the job] occurred despite his employment qualifications, and (4) that a substantial factor in his termination [or denial of the position] was his membership in the protected class.

*Hollins, supra*, 760 A.2d at 572 (citing *McDonnell Douglas, supra*, 411 U.S. at 802–05, 93 S.Ct. 1817).

The Commission found that Robinson met these requirements by showing that: (1) he is an African–American; (2) he was qualified for

the post-reorganization position of Regional Manager; (3) appellant did not consider him for the position; and (4) appellant's decision was substantially due to Robinson's race. In support of the fourth finding, the Commission stated that: (1) Robinson and Jim Sonne, whose jobs were eliminated in the reorganization, had been treated as professional equals, but only Sonne, a Caucasian, was offered one of the two Regional Managers positions; (2) the other Regional Manager position went to Tom Gallagher, a Caucasian, who had no prior experience as a Regional Manager; (3) Robinson had worked as Regional Manager for one and a half years and performed well enough to be promoted to Division Sales Manager and then to Sales Manager.

**14.** Once the employee makes out a *prima facie* case of discrimination, it "raises a rebut-

*field Co., supra,* 515 A.2d at 1099, citing in turn, *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The employer met that burden, as the Commission concluded, by providing evidence that the reason for its employment decision was its understanding that Robinson had indicated that he was not interested in the new position. *See id.* (noting that the employer's burden can be satisfied by " 'evidence from which the trier of fact [can] rationally conclude that the employment action [was not] motivated by discriminatory animus' ") (alteration in original) (quoting *Atlantic Richfield, supra,* 515 A.2d at 1099–1100). However, at the next step in the *McDonnell Douglas* analysis, the Commission found that the employer's asserted legitimate reasons were a pretext for discrimination. The employer argues that the Commission erred in that finding because there is no substantial evidence that the reasons for the company's decision-makers' actions were both false and motivated by a discriminatory intent.

▇▇▇▇▇ Once the employer presents a non-discriminatory reason for an employment decision, "the employee must show 'both that the reason was false, *and* that discrimination was the real reason.' " *Hollins, supra,* 760 A.2d at 571 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). The employer contends that the Commission could not find that any of the decision-makers, Lee Ottenberg, Kulp and Jollett, gave a false reason for the employment decision or were motivated by a discriminatory purpose. The employer argues that where, as here, a supervisor participates in promotions, pay raises and positive evaluations of an employee, the presumption is that subsequent adverse actions are not discriminatory.[15] There is a permissible inference of a non-discriminatory animus for a firing decision when made by the same person responsible for hiring and promoting the employee. *See, e.g., Williams v. Vitro Servs. Corp.,* 144 F.3d 1438, 1443 (11th Cir.1998) (holding that evidence that the same actor hired and fired a complainant raises a permissible inference of no discriminatory animus); *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270–71 (9th Cir.1996) (concluding that a strong inference of a non-discriminatory motive arises where the same person is responsible for hiring and firing the complainant within a short period of time); *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir.1996) (affirming summary judgment for the employer and recognizing the inference where the same person hired and fired the employee within a four year period). Since the inference is only a permissible one, the factfinder was not re-

table presumption that the employer's conduct amounted to unlawful discrimination." *Hollins, supra,* 760 A.2d at 571 (citing *Arthur Young & Co. v. Sutherland,* 631 A.2d 354, 361 (D.C.1993)).

**15.** With respect to Lee Ottenberg, the employer cites that he participated in the interviews leading to Robinson's hiring, that no racial incidents in the workplace are connected to him, that his decision was based on the recommendation of Kulp and Jollett, and that he unconditionally offered Robinson the job when he learned that they had been mistaken about Robinson's attitude. With respect to Jollett, the employer cites evidence that Robinson had previously told her that he did not like running routes, one of the job responsibility of Regional Manager, and therefore, she had no reason to question Kulp's report that Robinson was not interested in the job, and she immediately recommended that Robinson be offered the job upon learning that she had been mistaken about his lack of interest. Finally, the employer points out that there is no evidence or finding that Kulp acted with a discriminatory purpose or in bad faith in passing on Robinson's comment about the new position to Jollett, particularly given that Kulp had participated in hiring Robinson and had given him multiple promotions, pay raises and positive evaluations.

quired to accept it. The evidence highlighted by the employer is of the type that tends to weigh against a finding of discriminatory animus. However, deference must be accorded the credibility determinations and factual findings of the hearing examiner who heard and observed the witnesses. *See Gunty v. Dep't of Employment Servs.,* 524 A.2d 1192, 1197 (D.C.1987). We accept the Commission's factual findings *if* supported by substantial evidence. *RAP, Inc., supra,* 485 A.2d at 177 (citing D.C.Code § 1–1510(a)(e)(E)).

■ In reaching the conclusion that the reasons given by the company for its action were a pretext, the Commission first cited, consistent with its factual findings, that Robinson's comments about the new position were "not an absolute rejection of the position," but only an expression of a dislike for one of the responsibilities that it entailed. It also took into consideration: (1) evidence that Walker and Jollett decided that Sonne, a Caucasian, who was considered Robinson's professional equal, was a better fit for the position, even though Robinson was qualified for the position and Sonne's suitability was questionable;[16] (2) evidence that while not doing the same for Robinson, Jollett informed Sonne about the reorganization and its effect on the Sales Manager position and sought to ascertain his interest in the new position; (3) the lack of evidence that Robinson's job performance in any position was unsatisfactory or inferior to Sonne's; and (4) other evidence

that reflected the company's discriminatory animus, including that respondent had a longer probationary period when hired, the company ignored his recommended discipline for two of his white subordinates, and whites hold the management and sales jobs in the company, while minorities generally perform the manual labor.[17] Since these findings upon which the Commission relied are supported by substantial evidence in the record, we must accept its decision on the pretext issue even though a different one might have been reached on the same record. *See United Planning Org., supra,* 530 A.2d at 676 (citation omitted).

■ Robinson also argues that evidence supporting a reasonable basis for rejection of the employer's proffered legitimate reason, along with proof of his *prima facie* case is sufficient for a finding of discrimination. Explaining further the showing required under *Hicks, supra,* the Supreme Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Further, it noted that "[p]roof that the [employer's] explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."[18] *Id.* at 147, 120 S.Ct.

---

16. Sonne was disciplined for violating the employer's procedures, cited for negative behavior in the workplace, and actually on probation for noncompliance with the company's procedures at the time of the reorganization. Kulp also wrote Sonne a letter in 1994 regarding his destruction of the company's property.

17. The Commission referred to evidence that a white manager (not one of the decisionmakers in this case) had taken the sales route

of an Asian–American and refused to assign an African–American to a route with country clubs "because the clubs would not want 'niggers' serving them."

18. The Supreme Court recognized, however, that such a showing may not always support a finding of liability, for example, where "no rational factfinder could conclude that the action was discriminatory." *Reeves, supra,* 530 U.S. at 148, 120 S.Ct. 2097. Such circumstances would include where the record

2097 (citation omitted). Here, the Commission determined that the employer could not have reasonably believed that Robinson had absolutely rejected the position in light of the conceded qualification of Robinson's statement upon which the employer relied. Buttressing the Commission's determination is that at the time he made the statement and until the employer acted to terminate Robinson, the employer had not provided Robinson with information about the position and the serious consequences of not accepting it, while it had taken steps to insure that a similarly situated white employee was fully informed about the job. Thus, there was a rational basis for the Commission to find that the employer's explanation was not worthy of credence. When considered with Robinson's *prima facie* case and other evidence cited by the Commission supporting its finding of liability, we cannot conclude on this record that the Commission erred in finding the employer liable for unlawful discrimination. *See id.* at 148–49, 120 S.Ct. 2097.

### III. Damages

#### A. *Back–Pay/Front–Pay*

Ottenberg's argues that Robinson's rejection of its unconditional offer of the position of Regional Manager eliminates its liability for front-pay and back-pay from the date of his refusal. Robinson responds that there is evidence that his rejection of the job offer was reasonable,

and therefore, Ottenberg's remains liable for back-pay and front-pay damages.

The Supreme Court has held that an employer charged with unlawful discrimination under Title VII can toll the accrual of back-pay liability by unconditionally offering the claimant the job that he had been denied. *Ford Motor Co. v. Equal Employment Opportunity Comm'n,* 458 U.S. 219, 231–32, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). The rule is grounded in ancient law principles and the claimant's statutory obligation to minimize damages under Title VII, § 706(g). *Id.* at 231, 102 S.Ct. 3057 (citations omitted). This rule governs the availability of front-pay as well as back-pay.[19] *See Dominic v. Consolidated Edison Co. of New York, Inc.* 822 F.2d 1249, 1258 (2d Cir.1987) (noting that proof of a discrimination claimant's failure to mitigate damages would have foreclosed any front-pay award and cut off back-pay as of the time of failure to mitigate) (citing *Ford Motor Co.,* 458 U.S. at 233–34, 102 S.Ct. 3057). There are exceptions to the rule where special circumstances justify rejection of the offer of employment. *Ford Motor Co.,* 458 U.S. at 238–39 & n. 27, 102 S.Ct. 3057; *Lewis v. Federal Prison Indus., Inc.,* 953 F.2d 1277, 1279 (11th Cir.1992) (noting that "although the law encourages claimants to accept offers of reinstatement, it does not, in every circumstance, require them to do so"). Only the claimant's *unreasonable* rejection of an un-

conclusively showed a non-discriminatory reason for the employer's decision or a weak issue concerning the truthfulness of the employer's stated reason and "abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* (citations omitted).

19. "The goal of front pay is to put the victim [of discrimination] in the financial position he should have enjoyed, when circumstances make it inappropriate to direct the employer to promote (or hire) him." *Biondo v. City of*

*Chicago, Illinois,* 382 F.3d 680, 691 (7th Cir. 2004) (citing *Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 846, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001)) (other citations omitted). Thus, "front pay cannot extend past the time a reasonable person needs to achieve the same or an equivalent position in the absence of discrimination." *Id.* Back-pay is the sum that accrues prior to the effective date of the unconditional offer of the job. *See Ford Motor Co., supra,* 458 U.S. at 238, 102 S.Ct. 3057.

conditional offer of the job will cut off back-pay and front-pay liability. *Smith v. World Ins. Co.*, 38 F.3d 1456, 1463–64 (8th Cir.1994) (holding that reasonable rejection of an employment offer is a special circumstance under the *Ford* rule that permits recovery of back-pay damages); *Toledo v. Nobel–Sysco, Inc.*, 892 F.2d 1481, 1493 (10th Cir.1989) (noting that rejection of reinstatement offer, if reasonable under the circumstances, does not cut off back-pay liability). Whether rejection of the job offer is reasonable depends upon the circumstances surrounding the offer and its rejection. *Toledo*, 892 F.2d at 1493. (holding that offer of reinstatement was reasonably rejected where conditioned on claimant dismissing discrimination claim and passing polygraph and physical examinations); *Giandonato v. Sybron Corp.*, 804 F.2d 120, 124–25 (10th Cir.1986) (holding that circumstances surrounding claimant's rejection of reinstatement offer eliminated any claim for back-pay). The reasonableness of the claimant's decision to reject the offer is determined applying an objective standard, *i.e.*, whether a reasonable person, in similar circumstances, would have rejected the offer. *Morris v. American Nat'l Can Corp.*, 952 F.2d 200, 203 (8th Cir.1991) (citing *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 808 (8th Cir.1982)). The burden is on the employer to prove that the claimant failed to mitigate damages, *i.e.*, that rejection of its unconditional job offer was objectively unreasonable. *Smith, supra*, 38 F.3d at 1465 (citing *Muldrew v. Anheuser–Busch, Inc.*, 728 F.2d 989, 992 (8th Cir.1984)) (other citation omitted) (holding that while a claimant has a duty to mitigate damages, employer has the burden of proving failure to mitigate).

 When there are exceptional circumstances, the trier of fact, in its discretion, can give weight to them in determining whether back-pay damages accrued following rejection of an unconditional offer of the job the claimant was denied wrongfully. *Ford Motor Co., supra*, 458 U.S. at 238 n. 27, 102 S.Ct. 3057. In *Ford*, as an example of such a special circumstance, the Supreme Court cited the high cost of relocation for a replacement job as one the court might consider in determining whether back-pay damages should be awarded in spite of the claimant's rejection of the job. *Id.* Accepting the job may not be practicable where there is extreme hostility between the employer and the claimant. *Lewis, supra*, 953 F.2d at 1280–81 (citations omitted) (holding that offer of reinstatement was not viable where medical evidence showed that claimant's return to the job would cause the same symptoms that disabled him due to the discrimination he had endured); *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728–29 (2d Cir.1984) (holding that reinstatement offer would not foreclose front-pay award where employer-employee relationship was irreparably damaged by the lawsuit). While pervasive and intense hostility might be sufficient to constitute a "special circumstance" justifying rejection of the unconditional job offer, *Lewis*, 953 F.2d at 1280, the "mere recitation of hostility ... is insufficient, because 'antagonism between parties occurs as the natural bi-product [sic] of any litigation.' " *Saladin v. Turner*, 936 F.Supp. 1571, 1582 (N.D.Okla.1996) (quoting *Taylor v. Teletype Corp.*, 648 F.2d 1129, 1139 (8th Cir.1981)). If reinstatement were foreclosed because of such litigation hostility, it would frustrate the make-whole purpose of discrimination laws. *See Taylor*, 648 F.2d at 1138–39. To avoid operation of the rule, it is also insufficient for the claimant to cite personal reasons for rejecting the offer. *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1253 (10th Cir.2004); *Giandonato, supra*, 804 F.2d 120 at 124 (discrimination victim's refusal of offer of reinstatement because of his wife's illness, among

other reasons, was insufficient to allow back-pay claim). Applying these general principles, we consider whether Robinson was justified in rejecting the employer's offer of employment.

■ The Commission concluded that Robinson was justified in rejecting the job offer because of his concerns about returning to work with individuals who had continually discriminated against him. It considered that although Robinson had given examples of how he was mistreated at the meeting with Lee Ottenberg and Walker when they made him the offer, neither had attempted to alleviate his fears.[20] Therefore, the Commission determined that Robinson's back-pay award should not be tolled nor the award of front-pay affected. Ottenberg's argues that rejection of the employment offer was unreasonable under any objective standard, and therefore both back-pay and front-pay damages should be cut off as of the date that Robinson rejected the job offer.

Under the objective standard, the question is whether a reasonable person in Robinson's position would have refused the job offer. *Morris, supra,* 952 F.2d at 203. Consideration is given to the terms of the offer and the reason for the former employer's refusal. *Claiborne v. Illinois Cent. R.R.,* 583 F.2d 143, 153 (5th Cir. 1978), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979). Here, the

employer made the unconditional job offer almost immediately after denying Robinson the position and being informed that Robinson attributed the action to discrimination. The promptness of the unconditional offer is one factor tending to support the good faith of the employer's attempt to remedy the situation. Given that the offer came before litigation, hostilities engendered by litigation would not be a factor here. *Cf. Whittlesey, supra,* 742 F.2d at 728–29 (recognizing that deterioration of parties' relationship caused by litigation might make reinstatement unrealistic). That Robinson simply doubted that his employer would treat him fairly in the future is not sufficient in itself to avoid *Ford's* mitigation rule. The "mere recitation of hostility ... is insufficient because '[a]ntagonism between parties occurs as a natural bi-product of any litigation.'" *Saladin, supra,* 936 F.Supp. at 1582 (quoting *Taylor, supra,* 648 F.2d at 1139); *cf. Morris, supra,* 952 F.2d at 203 (upholding tolling of back-pay although the complainant, who had been subjected to sexually hostile work environment, did not believe the employer's assurances that it would protect her in the future).

Robinson argues that he made an effort to discuss his apprehension of future discrimination if he accepted the offer, but the employer did not adequately reassure him. He contends, therefore, that his refusal of the employment offer was reason-

---

**20.** The order does not enumerate any incidents that Robinson mentioned during the meeting of March 22nd, other than his frustration and concerns about how he was treated during his termination and how he believed that the actions reflected the owners' wishes. There are in the Commission's findings references to other incidents that occurred during Robinson's term of employment that were revealed during the litigation that may account for Robinson's treatment concerns, but the Commission did not mention them in this context. For example, al-

though both he and Sonne were given pay increases in 1993, Sonne also received a $750 bonus. Robinson felt that the difficulties that he had performing his duties were due to circumstances beyond his control and that he had never been given a satisfactory explanation about the bonus. Robinson received a better performance evaluation than Sonne in 1994; Robinson's evaluation indicated that he "exceeds standards or expectations," while Sonne was evaluated as meeting standards. Yet, Sonne was selected for the new Regional Manager's position, while Robinson was not.

able, applying the reasoning of *Saladin*, *supra*.[21] Robinson overstates his own efforts and understates the employer's assurances, both as determined by the Commission. While Robinson told the employer that he feared retaliation if he returned to work, he did not elaborate on his concerns. Aside from the complaint related to his termination, which the employer was seeking to remedy, Robinson made no complaints that he had been subjected to other acts of discrimination or had some other reason for his apprehension. Under the circumstances, the employer's response that the grievance process would be available to address any such issues was reasonable. It is undisputed that Robinson had received favorable evaluations, promotions and pay increases during his employment with the company. Under the totality of the circumstances, a finding that Robinson's rejection was objectively reasonable is not supported by the evidence. Therefore, we hold that Robinson's rejection of the employer's unconditional offer of the position of Regional Manager eliminated any claim for back-pay or front-pay on or after March 22, 1995, the date he rejected the employer's offer.[22]

### B. Award for Embarrassment, Humiliation and Indignity

The employer argues that the Commission erred in basing its award of damages for embarrassment, humiliation and indignity upon events that are barred by the one year statute of limitations.[23] *See* D.C.Code § 2–1403.04(a) (2001) (formerly § 1–2544(a)). The employer also contends that the continuous course of conduct does not apply to allow the assertion of claims outside the period of limitations. Robinson argues that the damages are based properly on "continuing direct discrimination."

 "[W]hen a [discrimination] plaintiff can show 'a series of related acts, one or more of which falls within the limitations period,' all of the discriminatory conduct falls within the statute of limitations." *Paul v. Howard Univ.*, 754 A.2d 297, 312 (D.C.2000) (quoting *Doe v. District of Columbia Comm'n on Human*

---

21. In *Saladin*, the court held that the discrimination plaintiff had failed to act reasonably in not responding to the employer's promise of no retaliation and offer to discuss proposals for preventing it. 936 F.Supp. at 1582. Therefore, the court held that he was not entitled to wages after expiration of the employer's reinstatement offer. *Id.* at 1581–82.

22. Under the *Ford* rule, the discrimination complainant must decide "whether to take the job offered by the [employer], retaining his rights to an award by the court of backpay accrued prior to the effective date of the offer, ... or, instead, whether to accept a more attractive job from another employer and the limitation of the claim for backpay to the damages that have already accrued." *Ford Motor Co., supra,* 458 U.S. at 238, 102 S.Ct. 3057. "Acceptance of the offer preserves, rather than jeopardizes, the claimant's right to be made whole." *Id.* at 234, 102 S.Ct. 3057. When the complainant rejects the offer, absent special circumstances, "his choice can be taken as establishing that he considers the ongoing injury he suffered at the hands of the [employer] to have been ended by the availability of better opportunities elsewhere." *Id.* at 238, 102 S.Ct. 3057.

In light of our disposition, we need not reach the employer's evidentiary challenge to the Commission's front-pay and back-pay award. The award of interest paid by Robinson on personal and business loans must be vacated because they include expenses incurred after the employee extended the offer of reinstatement. We cannot determine on the present record the extent to which these expenses were necessarily incurred as a result of denial of employment prior to the date that Robinson rejected the employer's offer.

23. Robinson concedes that his claim is not based on a hostile work environment and that the Commission's damage award is not based on that theory.

*Rights,* 624 A.2d 440, 444 n. 5 (D.C.1993)). "To be considered continuing in nature, however, the discrimination may not be limited to isolated incidents, but must pervade a series or pattern of events which continue into the filing period." *Id.* (quoting *Doe,* 624 A.2d at 445 n. 5). There is no showing here that the events falling outside the period of limitations for which these damages were awarded constitute a series or pattern of events that continued into the filing period. The Commission relied upon a series of unconnected events that occurred outside of the period of limitations.[24] Therefore, its award of damages for these elements must be vacated and redetermined based on only those events that fall within the period of limitations.[25]

### C. *Mental Anguish*

The employer also argues that there is no competent medical evidence supporting an award of damages for mental anguish. It contends that such evidence is required by the Commission's guidelines. Robinson contends that medical evidence is not required for this element of damages.

The Guidelines provide:

If, as a result of the unlawful discriminatory acts or practices of the respondent, the prevailing complainant was required to undergo medical or psychiatric treatment, *or, where no medical treatment was undergone, there exists evidence of anguish, pain, and suffering (e.g., headache, nausea, nervousness, insomnia, irritability, loss of weight ),* he or she shall be entitled to damages proved by

competent medical evidence thereof, as defined in § 213....

*Doe, supra,* 624 A.2d at 447 (emphasis added) (citing 31 D.C.Reg. § 213.4, at 6264 (1984)). The regulation appears to be somewhat ambiguous in requiring on the one hand competent medical evidence to recover for mental anguish, while at the same time recognizing that recovery may be had where certain other evidence exists (*i.e.,* "headache, nausea, nervousness, insomnia, irritability, loss of weight"). Since the damage award must be examined again by the Commission because of consideration of matters outside the period of limitations, we leave it in the first instance to resolve the ambiguity of its governing regulations.

### IV.

For the foregoing reasons, we sustain the Commission's finding of discrimination, reverse its award of damages and remand the case to the Commission for further proceedings consistent with this opinion.

*So ordered.*

---

**24.** The Commission cited, *e.g.,* that appellant's probationary period in 1991, while he awaited a Regional Manager opening, was thirty days longer than the probationary period of any other outside applicant; that in July 1992, he had to carry a heavier load than Sonne because of a personnel shortage, which had a negative impact on his evaluation and cost him a performance bonus; and that he was not informed of the planned reorganization in 1995, while Sonne was.

**25.** Therefore, damages must be limited to events occurring after June 27, 1994, since the complaint was filed on June 27, 1995.